UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JOHN B. BORCHELT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:04CV82 CEJ |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the denial of Plaintiff's applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Act.

## Procedural History

On August 23, 2001, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). (Tr. 37-40, 78-80). The claims were denied on December 12, 2001. (Tr. 29-33, 64-68) On October 28, 2003, Plaintiff testified at a hearing before an Administrative Law Judge (ALJ). (Tr. 477-497) In a decision dated March 17, 2004, the ALJ determined that Plaintiff was not under a disability at any time through the date of decision. (Tr. 10-19) On May 10, 2004, the Appeals Council denied plaintiff's request for review. (Tr. 2-4) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff was represented by counsel. At the time of the hearing, Plaintiff was 40 years old and completed 10th grade. He measured 6 feet 1 inch and weighed

340 pounds. He lived with his father. Plaintiff was last employed at Douglas Sawmill in October of 2000. He worked at the sawmill for two years, stacking slabs, railroad ties, and lumber, along with running an edger. Prior to that time, he worked at Lee Rowan from 1988 to 1995 as a machine operator running deck welders to make shelving. Plaintiff testified that he stopped working due to leg and back problems. (Tr. 480-483, 486)

With regard to his problems, Plaintiff stated that he experienced severe pain in his leg and knee. Dr. Lentz diagnosed arthritis. Plaintiff testified that he continued to have numbness in the bottom of his leg to his foot from his knee. Plaintiff also reported breathing problems. He stated that he had shortness of breath and that he had a CPAP machine for sleep apnea. Additionally, Plaintiff experienced back pain. He testified that he was unable to get around. If he sat too long, his leg hurt. In addition, if he stood or walked too much, his leg swelled up and went numb, causing Plaintiff's leg to drag and back to go out. (Tr. 483-485)

Plaintiff testified that his treating physician was Dr. Edward Doyle, who treated him for back problems. Dr. Lentz treated Plaintiff's knee and performed knee surgery in 2002. Plaintiff further stated that he underwent vein stripping in 1994 or 1995. Plaintiff stated that he experienced low back pain, most likely from favoring his leg. However, he also testified that his back had popped out of place several times. With regard to Plaintiff's shortness of breath, he reported that he had a CPAP machine for sleep apnea. He had not been hospitalized recently, as his knee surgery was outpatient. (Tr. 485-486)

With regard to Plaintiff's daily activities, he testified that he did very little but light work, watching television, and listening to the radio. He did help with the cooking, vacuuming, and sweeping. However, he had to take breaks to get off his feet, sit down, and catch his breath. Plaintiff

testified that he needed to sit down every five minutes due to knee discomfort and shortness of breath. Sitting helped, as did reclining in bed on his side with a pillow between his knees or under his legs. Plaintiff stated that reclining helped improve circulation and relieve numbness in his leg. He testified that being up too long caused swelling in his knee. He did not have problems doing things while seated. However, he stated that he frequently needed to lie down. In addition, he was unable to sit in certain chairs. Plaintiff testified that he took two to three naps during the day and that sometimes experienced insomnia during the night. (Tr. 487-489)

Plaintiff stated that either his father or his girlfriend helped plaintiff with the grocery shopping. Plaintiff testified that walking up and down the aisles bothered him. He could only walk for a half hour or 20 minutes at a time. Plaintiff was unable to drive because he lost his license after a DWI. He attended church every once in a while, and he was involved in Narcotics Anonymous for methamphetamine addiction. Plaintiff spoke with his counselors, his higher power, and his psychiatrist to stay clean. Plaintiff stated that he took Xanax and Risperdal for anxiety. (Tr. 489-491)

Plaintiff opined that he could lift around 20 pounds. Lifting more would cause his back to become weak and his leg to go out. He was unable to take care of the lawn. Mowing the lawn caused his knee to swell and hurt. Plaintiff also stated that riding in some vehicles bothered him. With regard to hobbies, Plaintiff enjoyed drawing, which he did for an hour or two per week. He also played cards by himself. While drawing, Plaintiff lay down if he sat too long. In addition, his hands occasionally hurt. Plaintiff testified that Dr. Doyle recently diagnosed him with diabetes and prescribed Glucophage XR. Plaintiff no longer had open sores on his leg, and his blood pressure was under control with medication. Plaintiff opined that he could only walk 100 yards. He stated that

his mailbox was a quarter mile away from the house, and that he had stop three or four times when retrieving the mail due to leg pain and shortness of breath. (Tr. 492-495)

**<u>Medical Evidence</u>**

On June 19, 1995, Plaintiff underwent multiple spot ligations and strippings for his marked vericosities in his left lower extremities. (Tr. 325) Physical examinations conducted by Dr. Doyle between November 2000 and October 2003, revealed diagnoses including hypertension; deep vein thrombosis (DVT); degenerative joint disease of the left knee, lumbosacral spine, and hips; osteoarthritis of the left knee, lumbosacral spine, and hips; obesity; sleep apnea; and COPD. Plaintiff continued to smoke, despite Dr. Doyle's advice to quit. (Tr. 203-268) Dr. Edward Doyle indicated on September 25, 2001 that Plaintiff's diagnosis, along with other impairments, was obesity. (Tr. 169) On October 15, 2001, Dr. Doyle referred Plaintiff to a sleep laboratory. Dr. Khalid I. Khan diagnosed Plaintiff with severe obstructive sleep apnea syndrome and suggested that Plaintiff be restudied and placed on a nasal CPAP. (Tr. 317)

An MRI of Plaintiff's knee on December 21, 2001 showed a probable degenerated and torn posterior horn of the medical meniscus; moderate knee joint effusion; mild spurring/osteoarthritic changes about all three knee joint compartments; mild, diffuse cartilaginous thinning; and extensive degenerative signal within the lateral meniscus and the anterior horn of the medial meniscus without definite tear. (Tr. 375)

Plaintiff visited Orthopaedic Associates, P.C., beginning in January, 2002 for complaints of left knee pain. Despite conservative treatment which included Celebrex and physical therapy, Plaintiff reported no improvement. On March 7, 2002, Dr. Rickey Lents injected Plaintiff's knee with Solucortef and Depomedrol. On April 19 and June 7, 2002, Plaintiff reported that he was still

4

symptomatic but improved. On July 25, 2002, Dr. Lents performed an arthroscopy and partial medical miscectomy of Plaintiff's left knee. There were no complications, and Plaintiff tolerated the procedure well. Dr. Lents noted on August 5, 2002 that Plaintiff continued to complain of mild to moderate discomfort. His portals were healed nicely. Dr. Lents recommended that Plaintiff attend physical therapy as tolerated and return in three weeks. (Tr. 366-371, 374, 410-467)

Plaintiff sought treatment from the Community Counseling Center on September 25, 2002 for complaints of depression and a history of suicidal thoughts. The therapist, Walter Major, diagnosed major depression, severe without psychotic features; history of polysubstance use; back and leg problems; financial, educational, family, and social stressors; and a GAF of 50. Mr. Major recommended that Plaintiff obtain a psychiatric evaluation for possible medication management. On February 27, 2003, Plaintiff saw Kishore Khot, M.D. for a psychiatric evaluation. Dr. Khot assessed major depression, recurrent severe without psychotic features; history of polysubstance abuse, in remission; sleep apnea, varicose veins, and hypertension; family and economic problems, severe; and a GAF of 60. Dr. Khot prescribed Remeron for depression and insomnia and recommended that Plaintiff follow-up with his physician in six to eight weeks. Plaintiff continued to see Mr. Major through October, 2003, during which time Plaintiff reported improvement with medication. (Tr. 377-394)

An MRI of Plaintiff's left knee on May 7, 2003 revealed osteoarthritic changes, patellar chondropathy, medial meniscal tear, prior patellar dislocation, and small joint effusion. (Tr. 471-476) On September 24, 2003, Plaintiff underwent another MRI of his left knee. The technician assessed tricompartmental degenerative changes of the left knee; small left knee effusion; marked chondromalacia; possible oblique inferior surfacing tear in the posterior horn of the medial meniscus;

and no acute fractrue, osseous malignancy, acute ligamentous injury, or acute tendon tear.  (Tr. 372-373)  Dr. Lents noted on October 22, 2003 that Plaintiff's left knee pain was getting better with Celebrex.  Physical exam revealed no effusion, no laxity, and no joint line tenderness.  The MRI was consistent with degenerative changes, and x-rays showed narrowing of both the medial and lateral joint space.  (Tr. 365)

On October 27, 2003, Plaintiff was diagnosed with Type II Diabetes.  On October 29, 2003, Dr. Doyle increased  Plaintiff's medication and recommended that Plaintiff stop smoking, reduce his weight with diet and exercise, comply with medications, and follow-up in 10 to 14 days.  He noted that Plaintiff was obese, with a BMI of 45.  (Tr. 355-358)

## The ALJ's Determination

In a decision dated March 17, 2004, the ALJ found that Plaintiff met the nondisability requirements for Disability Insurance Benefits and was insured through December 31, 2002.  Further, the ALJ noted that Plaintiff had not engaged in substantial gainful activity since the onset of his alleged disability.  The ALJ determined that Plaintiff had severe impairments consisting of left knee pain, low back pain, breathing problems which included sleep apnea, and depression.  He noted that Plaintiff's left knee, combined with his weight, restricted him to work where he is off of his feet most of the time.  Further, the ALJ mentioned Plaintiff's continued smoking against medical advice. In addition, he found that Plaintiff had "less than marked" limitations in his daily activities, social functioning, and concentration, persistence or pace that would be attributable to a mental impairment. Further, Plaintiff had not experienced relevant episodes of decompensation.  The ALJ noted that Plaintiff was able to function outside a highly supportive living arrangement and function independently outside the area of his home.  While Plaintiff had a severe mental impairment, he did

not meet the listings. In addition, the ALJ determined that Plaintiff's impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 17-18)

With regard to credibility, the ALJ found that Plaintiff's allegations regarding his limitations were not fully credible. Thus, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to understand, remember, and carry out simple instructions; make simple work-related decisions; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. Further, the ALJ found that Plaintiff could perform work which involved lifting no more than 10 pounds and occasionally lifting or carrying articles like docket files, ledgers and small tools. He determined that Plaintiff could sit for up to 6 hours in an 8-hour workday with normal breaks, and he could stand and/or walk for a total of 2 hours. (Tr. 18)

Plaintiff was unable to perform his past relevant work. However, the ALJ found that Plaintiff had the RFC to perform substantially all of the full range of sedentary work. Therefore, in light of Plaintiff's age, education, and work experience, the Grids directed a conclusion of "not disabled." The ALJ additionally found that nonexertional impairments did not compromise Plaintiff's capacity for sedentary work. Thus, the ALJ concluded that Plaintiff was not under a disability at any relevant time through the date of the decision. (Tr. 18)

Specifically, the ALJ evaluated the Plaintiff's testimony. Further, he noted that Plaintiff had not engaged in substantial gainful activity since October 20, 2000, the date he allegedly became disabled. The ALJ also assessed Plaintiff's medical history, noting Plaintiff's chronic low back pain, breathing problems, left knee pain, depression, and breathing problems. Despite Plaintiff's depression, the ALJ found that it did not impair Plaintiff's daily or social functioning or his

concentration, persistence or pace. With regard to Plaintiff's RFC, the ALJ noted that none of Plaintiff's treating physicians, the treating psychiatrist, or treating therapists opined that Plaintiff was disabled. However, Plaintiff was noncompliant with treatment plans. Further, the ALJ found that Plaintiff's allegations of symptoms precluding work were not credible. While Plaintiff was unable to perform any of his past relevant work, the ALJ relied on the Medical-Vocational Guidelines to direct a finding of not disabled. The ALJ noted that Plaintiff could perform substantially all of the requirements of sedentary work with no nonexertional limitations. Thus, he concluded that Plaintiff was not under a disability as defined by the Social Security Act at any time through the date of the decision. (Tr. 10-17)

## Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a). To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that plaintiff is not engaged in substantial gainful activity; (2) that he has a severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F. 3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902

F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[1] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak 49 F.3d at 1354.

### Discussion

The Plaintiff argues that the ALJ erred by failing to consider Plaintiff's lumbosacral and hip degenerative joint disease and osteoarthritis, failing to give appropriate weight to Plaintiff's subjective complaints, applying an improper standard for assessing Plaintiff's pain, and failing to obtain testimony from a vocational expert. The Defendant, on the other hand, asserts that substantial evidence supports the ALJ's credibility determination, assessment of the medical evidence, and use of the guidelines. The undersigned finds that the ALJ should have utilized a vocational expert (VE) in this case, and thus the case should be remanded for further proceedings.

Review of the ALJ's decision indicates that he defined "severe" as imposing significant restrictions on one's ability to perform basic work activities. The ALJ then continued to find that Plaintiff had a "severe" mental impairment that did not meet the criteria for any of the listed mental

---

[1]The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

impairments.

The undersigned notes, however, that under Eighth Circuit law, where a claimant "suffers from a severe mental impairment, the [Commissioner] must use vocational expert testimony . . . to meet [her] burden of showing the existence of jobs in the national economy that the claimant is capable of performing." Wheeler v. Sullivan, 888 F.2d 1233, 1238 (8th Cir. 1989); see also Vincent v. Apfel, 264 F.3d 767, 769-770 (8th Cir. 2001) (the ALJ should have utilized a VE to determine how plaintiff's mental impairment affected his RFC in light of the ALJ's finding that plaintiff's impairment was severe); Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997) (although plaintiff's borderline intellectual functioning did not meet a listing, plaintiff was entitled to have a VE consider this condition along with other impairments to determine how it impacted plaintiff's RFC). Although the ALJ found that Plaintiff's limitations were "less than marked" in the context of whether Plaintiff met the criteria for a listed impairment, he still considered Plaintiff's mental impairment to be severe. In light of this severe mental impairment, the ALJ should have consulted a VE to determine whether Plaintiff's nonexertional impairment(s) affected his ability to perform the full range of sedentary jobs.

The undersigned also finds that on remand, the VE should also consider Plaintiff's obesity and its affect on his ability to work. The undersigned notes that Plaintiff did not raise obesity as an impairment. See Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003) (a plaintiff must allege limitation in function due to obesity in his application or during the hearing for the ALJ to consider such). However, because the record reflects obesity and hypertension which could be significant nonexertional impairments, the ALJ should consider these on remand.[2] See Evans v. Chater, 84 F.3d

---

[2] The undersigned also notes Plaintiff's diagnosis of Type II Diabetes, which the ALJ did not discuss in the opinion.

1054, 1056 (8th Cir. 1996) (hypertension and obesity are significant nonexertional impairments, and ALJ should determine whether they diminish plaintiff's ability to perform full range of activities).

Accordingly,

**IT IS HEREBY ORDERED** that  the final decision of the Commissioner denying social security benefits be **REVERSED** and this case be **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum and Order.

_____
UNITED STATES DISTRICT JUDGE

Dated this 19th day of September, 2005.